459 So.2d 124 (1984)
Richard TOWNS, Plaintiff-Appellee,
v.
GEORGIA CASUALTY & SURETY CO., et al, Defendants-Appellants.
No. 16548-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1984.
*125 Theus, Grisham, Davis & Leigh by Brian E. Crawford, Monroe, Armand F. Rabun, Farmerville, for defendants-appellants.
Hayes, Harkey, Smith & Cascio by Charles S. Smith, Walker & Walker by Carl F. Walker, Monroe, for plaintiff-appellee.
Before MARVIN, JASPER E. JONES, and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
In this tort action arising out of a collision between a truck and an automobile, the truck defendants appeal, contending that the jury was clearly wrong in allocating only 10 percent of the fault to the automobile driver. CC Art. 2323.
In answer to the appeal, plaintiffs (Towns) contend that the jury erred in finding Mrs. Towns, the driver of the automobile, negligent to any degree and that the $260,000 damages awarded to her two-year-old son should be increased to $500,000. We affirm.

SCOPE OF REVIEW
The finding of negligence presents a question of law only when the inquiry or analysis concerns legal causation, the extent or scope of an actor's duty. Varnado v. Continental Ins. Company, 446 So.2d 1343, 1345 (La.App. 1st Cir.1984); Triangle Trucking Co. v. Alexander, 451 So.2d 638, 642 (La.App. 3d Cir.1984). In an ordinary tort action presenting cause in fact and reasonableness of conduct questions, the determination and apportionment of fault is a factual issue. Varnado, supra; Triangle Trucking Co., supra.
Findings of respective percentages of fault under CC Art. 2323 are factual findings just as the finding of contributory negligence under the prior law was factual. Appellate courts will not disturb such findings unless, for well articulated reasons, those findings are found to be clearly wrong, manifestly erroneous. Triangle, Varnado, supra; Thomas v. Missouri-Pacific R. Co., 451 So.2d 1152 (La.App. 3d Cir.1984); Abraham v. Hanover Ins. Co., *126 420 So.2d 526 (La.App. 2d Cir.1982). See also Swartz, Comparative Negligence, §§ 18.1, 18.5, and Symposium, Comparative Negligence in Louisiana, 40 La.L.R. 289 (1980); Reck v. Stevens, 373 So.2d 498 (La. 1979); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973). Compare Price v. Louisiana Farm Bureau Mutual Ins. Co., 457 So.2d 722 (La.App. 2d Cir. 1984).
Whether a fact-finder determines a party to be one percent at fault, totally at fault, or somewhere in between, the manifest error rule applies. Thomas v. Missouri-Pacific R. Co., supra, at p. 1158. A Louisiana jury's allocation of 95%-5% fault under the comparative negligence law has been upheld. Fritscher v. Chateau Golf & Country Club, 453 So.2d 964 (La.App. 5th Cir.1984). Different juries and jurors may often give dissimilar apportionment. Swartz, supra, § 17.1 at pp. 276-277.
A jury's assessment of damages will not be set aside unless it is found that the jury abused its much discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).

FACTS
The accident occurred during daylight hours near the intersection of La. Hwys. 33 and 826, blacktop roads in rural Union Parish. Hwy. 33 runs north and south. Hwy. 826 runs easterly from Hwy. 33, forming a T intersection. Defendant's log truck was proceeding north on Hwy. 33 and began a wide-sweeping right turn, intending to then proceed easterly on Hwy. 826. Mrs. Towns, driving the family two-door Pontiac Lemans automobile, was proceeding westerly on Hwy. 826, the inferior highway. Traffic proceeding westerly on Hwy. 826 is confronted with a stop sign at the intersection. Both vehicles approached the intersection about the same time. Mrs. Towns was slowing in obedience to the stop sign.
The collision occurred as the truck had completed its turn onto Hwy. 826 and when the front of the truck was 96 feet from the easternmost line of the pavement of Hwy. 33. Plaintiffs' expert and defendants' expert agreed that the front wheel of the truck was at least 1½ feet across the center line of Hwy. 826 at impact. The truck was a Mack truck with dual drive wheels, pulling a loaded log trailer which also had dual wheels, an "18 wheeler" in CB vernacular. The highway was 24 feet wide near the area of impact.
The bumper of the truck struck the left front of the Pontiac at the headlight and heavily damaged the left front side and door of the Pontiac. The experts also agreed that each driver could have seen the other vehicle when they were about 180 feet apart and that the truck was traveling about 20 mph and Mrs. Towns was traveling about 25 mph at impact. The vehicles were "closing" on each other at the rate of about 66 feet per second. The impact caused a serious head injury to plaintiffs' two-year-old son, Chad Towns, who was standing on the front seat of the car next to his mother. Also sitting on the front seat of the car was Chad's six-year-old brother who fortunately was not injured.
The truck driver said that he first saw the Towns vehicle about 200 feet away as he was making his turn and that, as Mrs. Towns traveled the few feet before impact, she was attending to moving the baby (Chad) next to her and was not observing the truck.
Mrs. Towns testified that she was "positive" that she was in her lane, but acknowledged that at a deposition prior to trial she had said that she thought she was on her side of the road but could not be positive about it. At trial she explained her deposition answer by stating, "there's no way to be a hundred percent positive." Mrs. Towns insisted, however, that her attention was not diverted from approaching traffic by the child before the accident occurred.
The state trooper testified that skid marks left by Mrs. Towns' Pontiac indicated that she was slightly over the center line at one point before impact, but not at impact. The trooper also testified that Mrs. Towns explained that she was hurrying *127 to get to her destination, a Tupperware party at a friend's home.
The plaintiffs' accident reconstruction expert opined that Mrs. Towns' Pontiac was "straight lined-up with the center line" for the 30 to 40 feet she traveled before impact and was in her lane at impact. In his opinion, Mrs. Towns had "at most" three seconds in which to react to the situation.
Defendants' accident reconstruction expert agreed that both drivers had no more than three seconds to react. He disagreed with plaintiffs' expert about the course of Mrs. Towns' car before impact. In his opinion Mrs. Towns' car, when a few feet before the impact, was slightly across the center line angled at about four degrees. Defendants' expert said that if Mrs. Towns had observed the truck 180 feet away when she should have, she would have had ample time, space, and distance either to stop or to turn her car to the right and avoid the accident.

CONCLUSIONS
The contentions of the parties and the testimony of the witnesses present purely factual and credibility questions. Where was Mrs. Towns on the highway? What was she doing, what was she observing? What should she have seen and done? The jury could have believed the truck driver and his expert about Mrs. Towns' position and observation before impact, and could have assessed Mrs. Towns with some fault. On the other hand, the jury could have believed Mrs. Towns and her expert and assessed her with no fault. Some fault had to be assessed to the truck driver because of his admission that he was across the center line at impact and before. There is substantial and credible evidence in this record from which the jury could have assessed the great majority of fault or all of the fault on the truck driver.
The Towns parties contend that Mrs. Towns was not negligent in any respect because she was faced with a sudden emergency not of her own making and acted reasonably under the circumstances, even though her reaction to the truck in her lane did not succeed in avoiding the collision. Deumite v. West Bank Contractors, 343 So.2d 289 (La.App. 1st Cir.1977).
Defendants argue that the sudden emergency doctrine is inapplicable and does not excuse a plaintiff's failure to observe a danger in sufficient time to avert a collision. Moody v. Arabie, 433 So.2d 833 (La. App. 3d Cir.1983). The Uniform Comparative Fault Act specifically addresses whether comparative negligence is applicable in such circumstances, while the Louisiana law is silent. See Wade, Comparative NegligenceIts Development in the United States and Its Present Status in Louisiana, 40 La.L.R. 299, at 313 (1980). Professor Wade suggests that Louisiana should provide, as section (1)(a) of the Uniform Act provides, that the rule of comparative negligence "applies whether or not under prior law the claimant's contributory fault ... was disregarded under legal doctrines such as last clear chance." Professor Wade says it would be unfortunate if CC Art. 2323 were construed as being applicable only when contributory negligence would have barred recovery. In this instance, we must agree. Compare majority and concurring opinions in Frain as Tutrix of Beason v. State Farm Ins., 421 So.2d 1169 (La.App. 2d Cir.1982).
There is substantial and credible evidence in this record from which the jury could have deduced that Mrs. Towns was not as observant as she should have been and that she was driving on or slightly over the center line of the highway just before she saw the truck in her lane of travel.
The truck defendants argue that if Mrs. Towns was negligent in the respects mentioned, then the jury was clearly wrong in its allocation because her fault was at least equal to the fault of the truck driver. We reiterate that the jury could have allocated some fault to Mrs. Towns. We need not decide whether her fault could have been assessed as high as 50 percent or, on the other hand, as low as zero or one percent. We simply find that the 90 percent-10 percent allocation of fault under *128 the circumstances of this record is supported and is not a clearly wrong finding of fact under CC Art. 2323. See cases cited under Scope of Review, supra; Thomas, supra, at p. 1158; Swartz, supra, at pp. 276-277.

QUANTUM
Young Chad Towns, standing on the front seat of the car, was thrown against the windshield and dashboard in the collision. He sustained puncture wounds and lacerations of his face and head, compound comminuted skull fractures, a concussion, and was rendered unconscious for 11 days. He was hospitalized for 27 days. With other medication, he was given Dilantin to prevent seizures. His injuries were serious and caused some residual brain damage. Expert opinion differs as to the degree of disability that Chad suffered and from which he may continue to suffer.
Experts testifying were Dr. Ware, a psychiatrist-neurologist; Dr. Gucker, a psychologist; Ms. Dunn, an occupational therapist; Dr. Bermudez, a neurosurgeon; Dr. King, a pediatric cardiologist; and Dr. Gay, a psychologist.
The accident occurred July 29, 1982. Trial was held about 18 months later on dates in January and February 1984. Dr. Bermudez treated Chad from the date of the accident, through his hospitalization, and as an outpatient on three occasions, November 1 and December 7, 1982, and June 14, 1983. Dr. King, the cardiologist, treated Chad during his hospitalization and as an outpatient on September 21, 1982. Dr. Gay, psychologist, saw either Chad or his parents on two occasions. Dr. Ware saw Chad and his parents on two occasions, February 22 and March 28, 1983. Dr. Gucker saw Chad on one occasion. Ms. Dunn saw Chad twice a day while he was in the intensive care unit at the hospital and seven times as an outpatient between November 12, 1982 and January 27, 1983.
Some experts opined that Chad would not be able to complete high school or to perform any work that would require physical dexterity. Other experts opined that Chad would fully, completely recover, and would not be limited academically or vocationally. The latter experts based their opinion in part on the progress that Chad made in the several months following the accident.
Dr. King testified about Chad's good recovery, return of memory, excellent recall, and good ambulation through the office visit of September 21, 1982. Dr. Bermudez mentioned that the last CT x-ray scan taken of Chad was "negative ... and showed no evidence of abnormality ... subdural collections." He opined that Chad's recovery, "neurologically speaking, was excellent, that Chad should continue to improve and have normal functions ... and make a full recovery." Dr. Gay opined that Chad should be able to complete high school and college and that 95 percent of the patients with vision and coordination problems similar to Chad's problem successfully recovered and resolved those problems.
In short, Dr. Ware and Dr. Gucker expressed considerable doubt about Chad's improvement or full recovery, while Dr. Bermudez and Dr. Gay expressed considerable optimism that Chad would fully recover.
Plaintiffs' economic expert, Dr. Bettinger, estimated Chad's total economic loss at $419,000 if Chad were totally disabled at age 18 and proportionately at 50 percent of that figure if Chad were able to perform only 50 percent of the jobs available to a normal person. Dr. Bettinger's estimates were based on the earnings of a worker who would be paid the minimum wage projected to the time when Chad would be 18 years old.
Chad's condition and progress during the 18-month period between the accident and the trial were thoroughly detailed to the jury. Expert opinion in most respects differed as to Chad's present condition and immediate prognosis and in greater respects as to his ultimate prognosis. Chad's economic loss (ranging up to $419,000, according to Dr. Bettinger) is, of course, related to Chad's present condition and his *129 ultimate prognosis. The jury awarded Chad $260,000 damages, and, to Chad's father, approximately $40,000 for Chad's future medical and approximately $20,000 for his past medical. The jury was interrogated only as to the total amount of damages sustained by Chad (CCP Art. 1812 C(4)) and was not asked to specify Chad's past or future damage or impairment of earning capacity.
Under the circumstances of this record, the damage award of $260,000 is not an abuse of the jury's discretion. Compare Ainsworth v. Government Employees Ins. Co., 427 So.2d 1220 (La.App. 3d Cir.1983), affirmed, 433 So.2d 709 (La. 1983).
At appellants' cost, judgment is AFFIRMED.