482 So.2d 83 (1986)
Mr. & Mrs. Joseph DRUEDING, Both Individually and on Behalf of Their Minor Son, Erik Drueding
v.
The ST. PAUL FIRE & MARINE INSURANCE CO., St. Paul Mercury Insurance Co., Rafael Reyna, d/b/a Happy Times Day Nursery and Happy Times Day Nursery.
No. CA-3711.
Court of Appeal of Louisiana, Fourth Circuit.
January 15, 1986.
*84 Joel P. Loeffelholz, New Orleans, for appellees.
Charles A. Boggs, Thomas W. Lewis, Terry B. Deffes, New Orleans, for appellants.
James L. Donovan, Jr., Metairie, for third party defendant.
Before GULOTTA, KLEES and LOBRANO, JJ.
GULOTTA, Judge.
A day care center and its insurer appeal from a jury verdict finding them liable for injury to a five-year old child who suffered a broken leg while playing on the nursery school grounds. Plaintiffs have also appealed, seeking higher expert fees and an increase of the $10,000.00 general damage award to at least the sum of $40,000.00. We increase the award to the sum of $25,000.00, but otherwise affirm the judgment.
The accident occurred at approximately 5 p.m. on February 21, 1980, in the front yard of the Happy Times Day Nursery in New Orleans. While jumping to catch a frisbee thrown by a playmate, five year old Erik Drueding collided with another boy, fell to the ground, and broke his right femur.
*85 Erik's parents filed suit for damages against the nursery, its owner Rafael Reyna, and his insurer, alleging that defendants were negligent in failing to supervise the children properly. Defendants third partied the Drueding's and their homeowners insurer, alleging that Erik's mother, who had been present at the accident scene, was herself at fault.
After a trial on the merits, the jury found in favor of the plaintiffs and awarded $10,000.00 in general damages. In response to written interrogatories, the jury exonerated Erik's mother and concluded that defendants were negligent by failing to meet standards required of a nursery under the circumstances.

LIABILITY
Appealing, defendants contend the jury's findings of liability are clearly wrong. Defendants point out that supervisors of nursery or day care centers, though charged with the highest degree of care toward children placed in their custody, are not the absolute insurers of their safety. According to defendants, the evidence establishes that two supervisors were on duty at the time of the accident, that the Happy Times Day Nursery complied with all applicable standards of the State of Louisiana for licensed child care facilities, and that the unfortunate accident simply resulted from the collision of two boys during normal childhood play. We disagree.
At the time of the accident, approximately fifteen children were playing in the yard while waiting for their parents to pick them up from school. According to a survey of the property in evidence, the area between the front steps of the building and the sidewalk is approximately sixty feet wide and twenty-seven feet deep. The yard contained a variety of playground equipment, including a carrousel, a see-saw, a slide, and a swing set. Although there were no eyewitnesses to the incident, Erik testified in a deposition two years later that he had fallen when an older boy accidently hit him in the left shoulder as they both went after a frisbee thrown by a third boy. After impact, Erik was found lying in a five foot wide area between the end of the slide and the building.
Dr. Regina Drueding, Erik's mother, testified that her son waved to her when she arrived to pick him up on the afternoon of the accident. Although he was running with children at the time, she did not see him engaged in a frisbee game. While speaking briefly with an acquaintance at the entrance to the school yard, Dr. Drueding heard a scream and then found Erik lying on the ground. According to Dr. Drueding, there were no adults in the yard at the time of the accident, although one young person was apparently seated in the yard with an unobstructed view of the children. She testified that there was inadequate space in the yard for playing ball or any other throwing activity.
Carl A. Hill, an expert in recreational education, testified that frisbee throwing, though not inherently dangerous, became dangerous in this case because of the lack of space in the yard. He was of the opinion that the Happy Times yard was not suited for forms of play such as catching and throwing, which require more open space. Dr. Hill noted that a list of frisbee activities for kindergarten through third grade suggested by the manufacturer of the toy did not include recommendations of chasing or jumping for the frisbee by more than one child. Dr. Hill had a "very negative opinion" of the responsibility of the nursery school under these circumstances, and concluded that a competent supervisor who knew the characteristics of children Erik's age could have foreseen the possibility that someone would be hurt while playing "unsupervised free-for-all" frisbee and should have stopped the play or suggested some other safer activity or method, such as throwing the frisbee at a target.
On the other hand, Jeffrey Nichols, an employee of the nursery, testified that at the time of the accident both he and a fellow employee were present in the yard and performing their regularly assigned jobs of supervising the children after school. According to Nichols, Erik asked *86 his mother for permission to play frisbee and she gave no indication that she did not want him to play with it or that she considered it to be unsafe. Although this witness acknowledged that it is possible and foreseeable that five-year old children running to catch a frisbee are not looking out for their own safety and would hit each other or an obstacle, Nichols testified that he allowed the boys to toss a football or play frisbee as long as their play did not get rough. He felt that this frisbee game was not getting out of hand before the accident.
Rafael C. Reyna, owner of the Happy Times Day Nursery, largely corroborated Nichols's testimony and further testified that the presence of two supervisors in the yard with fourteen children at the time of the accident was more than the number of supervisors required by State regulations. A supervisor of Licensing and Certification of child care facilities for the State Department of Health and Human Resources likewise testified that Happy Times was licensed and met the State requirements for supervisory personnel and play area, although he did not testify concerning frisbee play or the conditions in the yard on the date of Erik's accident. The jury also had the benefit of the testimony of Mary Ann F. Bendler, defendants' expert in the field of early childhood behavior, who was of the opinion that the throwing of the frisbee under the circumstances did not present a danger.
Although charged with the highest degree of care toward children placed in their custody, supervisors at day care nurseries are not absolute insurers of the children's safety and cannot be expected or required to prevent them from falling or striking each other during normal childhood play. Oldham v. Hoover, 140 So.2d 417 (La.App. 1st Cir.1962). Also well established in school-related accident cases is the rule that supervising teachers must follow a reasonable standard of care commensurate with the age of the children under the attendant circumstances, and liability is imposed only where there is a causal connection between the lack of supervision and the accident that could have been avoided by the exercise of the required degree of supervision. Patterson v. Orleans Parish School Board, 461 So.2d 386 (La.App. 4th Cir.1984); Prier v. Horace Mann Ins. Co., 351 So.2d 265 (La.App. 3rd Cir.1977), writ denied 352 So.2d 1042 (La. 1977). Where a child is exposed to an unreasonable risk of harm and suffers injury, liability will result. Bonnet, Etc. v. Slaughter, 422 So.2d 499 (La.App. 4th Cir. 1982); Freeman v. Wilcox, 303 So.2d 840 (La.App. 1st Cir.1974), writ denied 307 So.2d 630 (La.1975).
The lay and expert testimony considered in light of these applicable standards, we cannot say the jury was clearly wrong in finding that defendants failed to meet the care required of a nursery under the circumstances of this case. The testimony of Dr. Drueding and Dr. Hill support a conclusion that the defendant day care center was negligent in permitting Erik and his companions to engage in frisbee throwing in a confined play area where it was foreseeable that children of his young age could injure themselves in collisions with each other while jumping for the flying toy. Although the testimony of the school personnel and defendant's expert might support a contrary verdict, we cannot say the jury manifestly erred in placing more credence on plaintiffs' witnesses and giving greater weight to the opinion of plaintiffs' expert than defendants'.
The evidence likewise supports the jury's conclusion that Dr. Drueding did not negligently contribute to Erik's injury. Although defendant's employee testified that plaintiff gave permission to Erik to play frisbee, Dr. Drueding stated that she merely waved to her son and did not see him running in a dangerous way or engaged in a frisbee game. Again, on the basis of credibility, the jury could very well have concluded that Erik's mother did not consent to Erik's playing with the frisbee. Furthermore, because Erik was still on the school grounds and had not yet been released to his mother's care at the time of *87 the accident, the responsibility for his welfare rested on defendant's employees, not Dr. Drueding. For these reasons, the jury's verdict exonerating Dr. Drueding but finding defendants liable is not inconsistent.
Accordingly, we affirm the trial court's judgment of liability based upon the jury's findings.

QUANTUM
Turning now to plaintiffs' appeal on quantum, we find merit to the argument that the jury's general damage award of $10,000.00 general damages, a sum which includes $3,370.75 in stipulated medical expenses, constitutes an abuse of the jury's discretion. Our analysis of the facts leads us to conclude that the award is inadequate and, accordingly, we increase the award to the sum of $25,000.00, the lowest amount reasonably within the jury's discretion.
Erik suffered a broken right femur, an injury described by the medical experts as a proximal middle third oblique fracture with some anterior angulation. His thigh bone, the largest in his body, was broken completely through.
After Erik's parents took him to a hospital emergency room and x-rays revealed the break, a Russell traction device was attached to his lower leg. To accomplish this, the attending physician applied a local anesthetic and hand drilled a hole through Erik's tibia, a bone in his lower leg, to insert a metal pin which was then attached to a U-shaped device to suspend his leg in the air and straighten the bone by means of rope and weights.
Erik's parents testified that he screamed hysterically when his leg was x-rayed, when the surgical pin was inserted, and when the weights were adjusted during traction. They further stated that he had severe pain during recurrent muscle spasms, woke up crying continually during the night, suffered nightmares, and became fearful of medical personnel.
Erik remained hospitalized in traction for seven days before a plaster or "hipspica" cast was applied from his chest down both legs to his feet. Two additional days later he was discharged to convalesce at home. While in the plaster cast, Erik was unable to move or do anything for himself. Because Erik required constant care, Dr. Drueding had to ask her mother to come to New Orleans from Germany to assist her. Erik remained immobilized in the plaster cast for two months.
When the cast was removed, Erik's leg was atrophied and covered with a rash, his right foot turned outward, and he could not walk. After two weeks of rehabilitation exercises at home, however, he did manage to walk but limped badly because his legs were of unequal length. Over the ensuing months, after repeated visits to his doctor for evaluation, the limp disappeared and Erik's legs evened in length, although his foot was still turned outward somewhat. Six months post-accident, at the end of August, Erik was discharged by his attending physician, and returned to his normal activities by the end of December, 1981. The parties have stipulated that Erik has no residual disability from the accident.
Considering the severity of Erik's fracture, his physical pain and suffering, and his mental anguish, we conclude that the jury's award of $10,000.00 in general damages is inadequate and must be increased to the sum of $25,000.00 as the lowest point that is reasonably within the jury's discretion. Reck v. Stevens, 373 So.2d 498 (La. 1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). In so holding, we are not persuaded by the cases cited by defendants in support of the jury award.[1] *88 The cited cases involved injuries that were not as severe as Erik's and did not cause a comparable degree of pain and suffering as that suffered by this child of tender years.
We decline, however, to increase the expert fees. According to plaintiffs, the $200.00 fee to each of the three medical experts should be raised to at least $350.00, and the $150.00 fee award to Dr. Hill, the recreational expert, should be increased to at least $800.00. The amounts of expert fees are set by the trial court considering the value of the time employed and the degree of learning or skill required. LSA-R.S. 13:3666; Polites v. Millers Mutual Fire Ins. Co. of Texas, 267 So.2d 214 (La. App. 4th Cir.1972); Pike v. Stephens Imports, Inc., 448 So.2d 738 (La.App. 4th Cir. 1984). Although we might be inclined to set higher amounts, we cannot say the trial judge abused his discretion in this case. We therefore will not disturb the expert fee awards. Pike v. Stephens Imports, Inc., supra; Simoneaux v. Davis, 397 So.2d 835 (La.App. 4th Cir.1981).

DECREE
Accordingly, we amend the judgment in favor of plaintiffs, Mr. & Mrs. Joseph Drueding, individually and on behalf of their minor son, Erik Drueding, and against defendants, Rafael Reyna, d/b/a Happy Day Nursery, Happy Times Day Nursery, and St. Paul Fire and Marine Insurance Company, jointly and in solido, from the sum of $10,000.00 to the sum of $25,000.00, together with legal interest from date of judicial demand until paid and for all costs. In all other respects, the judgment is affirmed. Costs of this appeal to be paid by defendants.
AMENDED AND AFFIRMED.
NOTES
[1] Phillips v. Skate Country East, 420 So.2d 730 (La.App. 4th Cir.1982), writ denied 423 So.2d 1162 (La.1983) [$12,000.00 in general damages to a plaintiff who suffered a broken tibia and fibula, wore a cast "of some type" for nine months, and complained of pain]; Fontenot v. American Fidelity Fire Ins. Co., 386 So.2d 165 (La.App. 3rd Cir.1980) [$5,000.00 award where a plaintiff with a fractured tibial tubercle and hip socket wore a brace and recovered within one month of the accident]; Rollins v. Concordia Parish School Board, 465 So.2d 213 (La.App. 3rd Cir.1985) [$10,000.00 award where a plaintiff had a non-comminuted transverse fracture of tibia and fibula causing moderate pain and wore a cast on one leg for about two months post-accident].