LOBRANO, Judge.
On July 22, 1985, Chianni Yates (Chianni) fell from a sliding board and fractured her right elbow while playing in the back yard/playground of The Children’s Workshop, the day care center she attended. Chianni, through her mother and natural tutrix Adrienne Yates (Adrienne), filed suit in the Civil District Court for the Parish of Orleans against The Children’s Workshop and its insurers, ABC Insurance Company and St. Paul Fire & Marine Insurance Company for the injuries she suffered.
The trial court found The Children’s Workshop liable, awarding Chianni $30,-000.00 for pain and suffering, $15,000.00 for future medical expenses, and $1,100.00 for past medical expenses, for a total of $46,100.00.
The Children’s Workshop appeals, asserting that the court erred: (1) in concluding that the sliding board was unsafe for a child of Chianni’s age; (2) in placing the burden of proving the safety of the apparatus for a child of Chianni’s age upon the defendant; (3) in finding that Chianni had not been properly supervised; and (4) in awarding Chianni an excessive amount for future medical expenses.
These assignments of error can be consolidated into the following dispositive issues:
(1) Was Chianni negligently supervised by personnel of the Children’s Workshop at the time of the accident?
(2) Were the damages awarded Chianni for future medical expenses excessive?
FACTS:
The accident in question took place after school hours on July 22, 1985. Chianni, then four years old, was the only child on the playground at the time the accident occurred. Marva Doughty, the administrator/owner of The Children’s Workshop, had gone inside to answer the telephone. Chi-anni was under the sole supervision of Brendel Wharton (Wharton), a 17 year old girl who was a paid assistant at the Children’s Workshop.
There are two slides on the playground. The smaller slide was built according to specifications for children ages 3-8. The larger slide is similar, but its platform is taller by several feet. The accident occurred on the larger slide. At the time, Wharton was seated in a chair approximately 16 feet from the larger slide. She watched Chianni climb up the slide steps, and saw her fall from the next-to-highest step. She testified:
“Q. Explain to us how Chianni fell.
A. She was walking up this way, straight up, and she fell over that side of it.
Q. So she was walking up the slide backwards or up the steps?
A. No, up the steps.
Q. In the back?
A. In the back.
Q. And she fell down?
A. Yes, she fell over this little edge.
As a result of the fall, Chianni suffered a non-displaced fracture of the elbow which involved damage to the growth plate and required a cast.
LIABILITY
Defendants argue that the trial court erred'in finding them at fault. Specifically, they argue that the court, rather than require plaintiff to prove the slide was unsafe, instead placed the burden on them to prove that the slide was safe for use by four year olds. Defendant • also argues that-the court overlooked plaintiff’s stipula *505 tion at the start of the trial that the slide was not defective.[1]
Although the trial court suggested that there was no evidence showing that the slide from which plaintiff fell was safe for use by four year olds, it is clear that the basis for liability is defendant’s lack of supervision. Defendant’s reliance on the burden of proof analysis in Waters v. McDaniel Recreation Center Inc., 521 So.2d 788 (La.App.2nd Cir.1988), writ denied, 524 So.2d 520, is not applicable to the instant case. That case involved a claim based on an allegedly defective walkway. In Waters, plaintiff sought recovery under theories of strict liability and negligence. However, both theories were predicated on the assertion that the walkway posed an unreasonable risk of harm, i.e. it was defective. The court in that case held that under either theory the plaintiff had the burden of proving that the walkway was defective.
In the instant case, plaintiffs claim is predicated, not on a defective slide, but on defendant’s failure to supervise those entrusted to its care. This court, in Drueding v. St. Paul Fire and Marine Ins. Co., 482 So.2d 83 (La.App. 4th Cir.1986) summarized the duty of care, which we deem applicable in this case, as follows:
“Although charged with the highest duty of care toward children placed in their custody, supervisors at day care nurseries are not absolute insurers of the children’s safety and cannot be expected or required to prevent them from falling or striking each other during normal childhood play. Oldham v. Hoover, 140 So.2d 417 (La.App. 1st Cir.1962). Also well established in school-related accident cases is the rule that supervising teachers must follow a reasonable standard of care commensurate with the age of the children under the attendant circumstances, and liability is imposed only where there is a causal connection between the lack of supervision and the accident that could have been avoided by the required degree of supervision.” Id. at 86.
Plaintiff was four years old at the time of the accident. The evidence shows that she fell from the higher of the two slides. Wharton, who was watching plaintiff, was seated approximately sixteen feet away. Although Wharton’s testimony, quoted supra, is not clear as to whether Chianni was climbing the steps backwards, or climbing up the back of the steps, we are satisfied that she was not in a position to assist plaintiff or physically prevent the fall. Nor is there any evidence to suggest she advised or attempted to prevent plaintiff from climbing the steps in a fashion that apparently was not normal. Wharton was seventeen at the time, and although had worked for defendant since she was twelve, had no formal training in child care or supervision nor was she licensed in child care.[2]
Although Doughty highly praised Wharton’s past work experience, given the facts of this case we cannot say that the trial court was clearly wrong in finding defendant at fault because of inadequate supervision. Defendant strenuously urges that nothing they could have done would have prevented the accident; that-plaintiff was the only child Wharton had to watch; that she was in fact looking at her the whole time; and that plaintiff had never had an incident in the use of the slide. We find no merit in those arguments.
Wharton could have easily prevented the accident by prohibiting plaintiff from climbing the steps in an unusual fashion; by positioning herself closer in order to assist plaintiff since she was using the taller slide; and, possibly by prohibiting her use of that particular slide. The fact that plaintiff was the only child on the play *506 ground at that time is suggestive that Wharton could have taken any one of these preventive measures.
QUANTUM
Plaintiff sustained a fracture of her right elbow which involved her growth plates. The medical evidence indicates that the growth plate had closed. In addition to the general damage award, the trial court awarded $15,000.00 in future medicals. Defendant argues that this award is not supported by the evidence, and relies on our decision in Landry v. Bill Garret Chevrolet, Inc., 443 So.2d 1139 (La.App. 4th Cir.1983), writ denied, 445 So.2d 441 (La.1984). The thrust of defendant’s argument is that plaintiffs future medical treatment is speculative.
The standard fot determining future medical expenses was set out in Martinez v. U.S. Fidelity and Guaranty Co., 423 So.2d 1088 (La.1982). In Martinez, the Louisiana Supreme Court held that a plaintiff must prove that there is a probability that he or she will incur future medical expenses because of injury or illness caused by the defendants’ negligence. The Second Circuit Court of Appeal in Edwards v. Lewis Grocery Co., 391 So.2d 13, 16 (La.App. 2nd Cir.1980), stated: “[pjrerequi-sites for such an award include some medical testimony that future medical treatment is indicated and setting out the probable costs.”
The medical problem which is the basis for the award of future medical expenses is the probability of future surgery to correct the angular deformity which may occur to Chianni’s elbow as she reaches skeletal maturity.
Two orthopaedic surgeons testified at trial. Dr. James Butler examined Chianni once, on August 8, 1988, three years after' the accident. He testified that Chianni had suffered a non-displaced fracture of the right elbow going through the epiphyseal or growth plate (the area where the bone grows lengthwise.) An evaluation made at that time revealed an alteration in growth, and x-rays revealed a closure of the growth plate.
Dr. Butler further testified that any injury or medical condition that might affect normal growth through a growth plate may alter the growth in that area. He testified that some difference in elbow an-gulation would be probable as the person continued to grow. An osteotomy, (a cutting and realigning of the bone to match the other side), would be the required surgery to correct such a deformity. However, the necessity for such surgery would be determined by the degree of angular deformity, either from a cosmetic or functional point of view, when the patient reaches skeletal maturity. When asked to what degree of medical certainty could he opine that surgery would be required, he answered: “I don’t think I can say with any degree of medical certainty.” On cross examination however he stated that from a cosmetic point of view, a difference of ten degree angulation of the unaffected side to the affected side would be sufficiently noticeable to require surgery. Then, when asked if Chianni’s condition would progress to the point where a ten degree angulation would develop, he answered, “I think there is a distinct probability that it will.”
Dr. Ruel was the treating physician. He also testified to the non-displaced fracture of the right elbow through the growth plate. He stated that closure of the growth plate usually takes place between the ages of 14 and 17, and expressed concern that Chianni’s growth plate had closed at age 6. He would not confirm the probability that a deformity would develop requiring surgery. However, he did express his desire to see Chianni periodically over the next ten years to monitor the progress of the deformity. His opinion was that he would recommend surgery only if a functional disability resulted, and at this time it was too early to opine with any degree of certainty. If the surgery becomes necessary, he estimates its cost to be between $2,000.00 and $3,000.00, while the hospital cost will be approximately $8,000.00 to $10,000.00.
In this case, we believe the plaintiff has not proved by a preponderance the medical probability required to substantiate an *507 award of future medical expenses. Dr. Butler’s testimony is contradictory on this point, and Dr. Ruel’s opinion is that it is too early to say with any degree of certainty. However, it is apparent that Chianni will need observation at least once a year for the next ten years. Dr. Ruel testified those costs would be approximately $50.00 per visit, plus $120.00 per x-ray, or a total cost of $1,700.00. We therefore reduce the award for future medical expenses to $1,700.00. In all other respects the judgement is affirmed.
AMENDED, AND AS AMENDED, AFFIRMED.
WILLIAMS, J., dissents with reasons.

. As a result of plaintiff's stipulation, the trial court dismissed the third party demand of defendant against the manufacturer of the slide. Defendant does not appeal that dismissal, and thus that issue is not before us.

. The facts in Drueding were less egregious than the instant case. In Drueding there were fifteen children in the playground under the supervision of only two persons. In addition, the mother of the child was present when the injury occurred. Nonetheless, the Court found the day care center responsible.