CRAIN, Judge.
While grocery shopping at “The Real Superstore” Mrs. Louella Trusclair slipped in standing water which was located directly in front of an ice machine in the store. Mrs. Trusclair allegedly suffered personal injury as a result of that accident and subsequently instituted this action against National Tea Company (National), owner of The Real Superstore; Brown Eagle Ice Company, which sold and delivered ice to the store (Brown Eagle); and its insurer, American Manufacturers Mutual Insurance Company (American). National instituted a third party action against Brown Eagle and American.
After trial on the merits, in response to jury interrogatories, the jury reached a verdict in favor of plaintiff and Brown Eagle. One hundred percent fault was attributed to National. Plaintiff was awarded damages as follows:
*465 Past physical pain and suffering $ 500.00
Past and future mental anguish -0-
Past medical expenses 4094.83
The district court rendered judgment in conformity with the verdict. From this judgment Mrs. Trusclair appeals alleging as error: quantum; and the trial court’s refusal to grant plaintiffs motions for ad-ditur, judgment notwithstanding the verdict and for a new trial on the issue of damages.
QUANTUM
In the first and second assignments of error appellant contends that the jury’s awards for past and future pain and suffering, past and future mental anguish, and future medical expenses were an abuse of discretion.
It is uncontested that Mrs. Trusclair slipped in standing water while grocery shopping. The jury obviously found that an accident occurred at the store on August, 1987 and that plaintiff suffered personal injury as a result of the accident. The extent of injury and pain and suffering and the amount of damages to compensate plaintiff for the injuries suffered as a result of the August 23, 1987, accident are at issue.
Plaintiff contends that as she slipped she grabbed the shopping cart which steadied her and prevented her falling to the floor; she instead fell to one knee and at that time felt a pulling in the thigh muscles.
An accident report was completed immediately after the accident by Blake Oubre with the assistance of Mrs. Trusclair. Mr. Oubre was employed by National as a security guard. Mrs. Trusclair signed the report and at trial did not contest its accuracy. The incident was described as follows: “Customer was walking and almost fell on floor due to the presence of water in front of the ice machine. Customer is pregnant.” In written response to the question of whether she was injured, the report read: “Customer almost done the ‘leg splits,’ causing her to possibly having pulled thigh.muscles.” A separate incident report entitled the “Short Form” also filled out by Oubre and Mrs. Trusclair stated: “Customer made awkward move, i.e.; twist body.” Mrs. Trusclair subsequently learned that she was not pregnant.
Plaintiff was examined by her family physician, Dr. Douglas Davidson, on August 24, 1987. She related to Dr. Davidson a history of the previous day’s accident and complained of lower back pain. Dr. Davidson stated that the physical examination revealed mild to moderate spasm in the lumbar muscles; normal neurological examination; positive straight leg raising test at 70 degrees; negative sciatic nerve test; and range of motion consistent with her age (32) and size (5'8" tall and 250 pounds). His diagnosis was strain of the lumbar muscles. He classified her as being unable to work between her initial visit of August 24, 1987, and December 4, 1987. He stated that at the December 4, 1987, office visit plaintiff had minimal symptoms and was no longer on analgesics. She was not referred by him to a specialist, and she was not seen by him subsequent to that visit. Dr. Davidson did not recall treating plaintiff for back pain prior to August 24, 1987.
Plaintiff was treated by Dr. Joseph T. Bowles, a chiropractor, from December 9, 1987, to March 15, 1988.
Plaintiff was also treated by Dr. Robert Hall who was accepted by the court as an expert in internal and general medicine. Dr. Hall examined plaintiff on April 7, 1988, for complaints of lower back pain. The results of the physical examination revealed limited mobility of the spine both forward and laterally and bilateral discomfort along the piriformus muscle. He ordered a CT scan which revealed disc bulges at L4-L5 and L5-S1. Dr. Hall stated that plaintiff’s injuries were consistent with the history of the slip and fall accident which plaintiff related to him. Plaintiff was referred by Dr. Hall to Dr. Robert E. Han-chey, neurosurgeon.
Plaintiff was examined by Dr. Hanchey on July 1, 1988. Dr. Hanchey, accepted by the court as an expert in neurosurgery, testified that at that time plaintiff complained of low back and left leg pain. The physical examination revealed some tenderness to palpation over the left buttock. *466 The remainder of the examination, which consisted of bending maneuvers, observations, sperspasms, reflexes, sensation and strength, was normal. Dr. Hanchey reviewed the prior CT scan and ordered a myelogram and another CT scan, which were performed on August 15, 1988. Dr. Hanchey stated that the myelogram revealed a central anterior epidural defect at the L4-L5 level. The L5-S1 level appeared to be within normal limits. The CT scan revealed the L5-S1 level was normal and at L4-L5 a “one centimeter wide focal protrusion of the central posterior margin of the disc, extending four millimeters into the central anterior epidural space,” i.e., a small disc rupture in the midline L4-L5. He next examined plaintiff on September 26, 1988. The physical examination revealed some evidence of muscle spasm. Dr. Hanchey stated that the symptoms exhibited by plaintiff were attributable to the protruding disc. He stated that the disc protrusion was mild and is a condition which is commonly found in persons of plaintiffs age and older. In his opinion the disc protrusion was not caused by the August 23, 1987 accident; it was a pre-exist-ing condition which was aggravated by the accident. His recommended course of treatment was drastic weight loss; she would not require future surgery. She was released on September 28, 1988, to return to work doing light duty assignments.
At the request of National, plaintiff was examined on September 27, 1988, by Dr. Reginald Bryan Griffith, Jr. Dr. Griffith was accepted by the court as an expert in orthopedic surgery. After a physical examination of plaintiff and a review of the CT scan and myelogram, Dr. Griffith’s clinical impression was chronic lumbosacral strain with a small component of central L4-L5 disc. He noted that plaintiff had no objective manifestations of nerve root impingement from the disc and that there was very little likelihood that surgery would offer her any relief. Dr. Griffith's recommended course of treatment was weight loss and a series of exercises to increase abdominal muscular tone. He stated that a central bulge disc is not a significant abnormality in that thirty-five percent of the population who have never had back problems would have a central bulge revealed on a CT scan.
At the request of plaintiffs counsel plaintiff was examined by Dr. Stuart Phillips, an orthopedic surgeon. Dr. Phillips testified by deposition that he examined plaintiff on January 19, 1990, and noted paraveterbral muscle spasms and a positive straight leg raising test which indicated radiation of pain from the herniated disc. In Dr. Phillip’s opinion, plaintiff would possibly require future surgical intervention. He stated that she has twenty percent loss of function of her back.
Plaintiff is trained as a secretary and nurse’s aide. She had not worked outside the home for approximately six years before the accident. She stated that she worked for Community Network, Inc. from October, 1987, to May, 1987. Her duties included assisting handicapped residents in getting into and out of their beds and wheelchairs. She applied with the City-Parish of East Baton Rouge for a clerk-typist position. The application was dated September 18, 1989. In that application was the question: “Do you have any physical or mental defects, disabilities or chronic disease?” To that question plaintiff checked the “no” column. She further admitted on cross-examination that she stated in her City-Parish application that she had worked continuously for Community Network, Inc. from October, 1987 through September of 1989, although in reality, she had not worked for CNI for approximately nine of the months in the interim.
Plaintiff admitted that she had been involved in an automobile collision three months prior to the August 23, 1987, accident. The driver of the vehicle which struck plaintiff’s vehicle from the rear had no insurance. Plaintiff stated that she was not injured in that collision.
The jury heard conflicting testimony regarding the cause of plaintiff’s injuries, the extent of those injuries, the possibility of future surgery, and the prior rear-end collision. It considered plaintiff’s equivocal testimony regarding her work history and *467 her negative response in the job application to the question of whether she suffered any physical disabilities. Considering the jury’s award of $500 for plaintiff’s past pain and suffering and its failure to award damages for mental anguish, the jury obviously found that plaintiff had not suffered a herniated disc as a result of the August 23, 1987, accident.
After a review of the record, we find that the jury clearly abused its much discretion in awarding the sum of $500 for plaintiff’s pain and suffering. Reck v. Stevens, 373 So.2d 498 (La.1979). To several examining physicians, plaintiff described her pain as mild. Other than during the first several months after the accident, plaintiff did not take muscle relaxants and analgesics. She had never been hospitalized for her condition, worn a brace nor needed traction. However, she suffered occasional muscle spasms to the time of trial. A general damage award can be raised only to the lowest amount which could have been awarded by a reasonable trier of fact. See Fruge v. Thornhill, 560 So.2d 909 (La.App. 1st Cir.), writ denied, 567 So.2d 618 (La.1990). We find the sum of $5,000 to be the lowest amount which could have reasonably been awarded.[1]
Having amended the judgment of the trial court by increasing quantum we need not address the remaining assignments of error. Costs are assessed against National.
AMENDED AND AS AMENDED AFFIRMED.
SHORTESS, J., agrees that the jury abused its discretion and would award greater damages than the majority.

. All members of the panel agree that the judgment of the district court should be amended to increase the award. One member of the panel disagrees with the amount of increase. In this situation it is not necessary that a five judge panel hear the case. Hurst v. Eaton, 588 So.2d 1130 (La.App. 1st Cir.1991).