631 So.2d 632 (1994)
Carolyn FRELOW, Plaintiff-Appellant,
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, et al., Defendants-Appellants.
No. 93-759.
Court of Appeal of Louisiana, Third Circuit.
February 2, 1994.
*633 J. Rock Palermo III, Norman Jefferson Thigpen, Lake Charles, for plaintiff-appellant.
James R. Shelton, Lafayette, for defendants-appellants.
Before DOUCET and KNOLL, JJ., and CULPEPPER[*], J. Pro Tem.
WILLIAM A. CULPEPPER, Judge Pro Tem.
This is a trip and fall accident case. Plaintiff, Carolyn Frelow, filed this personal injury suit on behalf of her minor son, James Papillion, against Western Sizzlin Steakhouse (in Lake Charles) and its liability insurer, St. Paul Fire & Marine Insurance Co., on August 14, 1991, alleging negligence on the part of Western Sizzlin and its employees. Western Sizzlin and St. Paul answered with a general denial and alleged the contributory negligence of both James and Carolyn. The trial judge held that James was 40% at fault and Western Sizzlin was 60% at fault for the accident, and awarded to James $905 medical expenses, $500 general damages and $150 expert witness fees, all to be reduced by 40%.
Plaintiffs appeal the allocation of fault and the award of general damages. Western Sizzlin and St. Paul appeal the finding of fault as to defendants.

FACTS
On December 30, 1990, a Sunday afternoon at about 2:00 p.m., James Papillion, ten years old, was having lunch at Western Sizzlin Steakhouse in Lake Charles with his mother, brothers and sisters, cousins and grandmother. James had just been to the salad bar with his mother and sister and was carrying his salad plate back to his family's table. His sister was right behind him. James's mother, Carolyn Frelow, had already returned to the table.
James and his sister chose the most direct route between the tables back to their own *634 table, a fairly straight path. This route took them past a recently vacated booth which was being cleaned by Michael Bruce, a busboy. On the other side of the aisle was an occupied table. As James proceeded to pass this point, at a fast walk, he tripped over Bruce's foot, which was sticking into the aisle as he leaned into the booth he was cleaning. James reeled and hit his back on the corner of a table, then fell onto the floor face down. His salad plate fell on the back of his head.
Bruce testified that, out of the corner of his eye, he saw James approaching the booth he was cleaning. He stated that James was walking fast, but not running. As James attempted to pass by, he tripped over Bruce's heel, which Bruce said was not really in the aisle, but just to the side by the booth. Bruce helped James up and asked him if he was all right, to which James replied, "Yes". Bruce testified that James's mother then appeared and fussed at James for running in the restaurant. She had previously admonished James for running in the restaurant, before they had gone to the salad bar. James and his family then proceeded to eat their meals. They left the restaurant about an hour later.
Two other Western Sizzlin employees, Jenny Busby and Tammy Crysel, witnessed the accident. Both testified that James was not running at the time, but was walking fast. Crysel stated that Bruce was standing in the aisle at the side of the booth, bending over it and leaning on one knee with the other leg "kind of out". James tripped over the foot that was out. Jenny testified that Bruce was bent over the booth, but standing in the aisle when James tripped over Bruce's foot.
Tiffany Coleman, the assistant manager, testified that, although she did not see the accident, she was informed of it immediately. Coleman said that, as James and his family were leaving the restaurant, they stopped to report the accident and show Coleman the red welt on James's back.
James and Carolyn Frelow, James's mother, testified at trial that James complained of headaches and a backache for a week after the accident. Carolyn gave him Tylenol for the headaches. Then, the following Sunday, James developed a severe headache during church, which caused him to break into a cold sweat. The next day, Monday, Carolyn took James to their family doctor, Dr. Kane, for a checkup. There is no evidence in the record of Dr. Kane's findings. His charge for an office visit was $28.
On Tuesday, January 9, 1991, Carolyn took James to her chiropractor, Dr. Carol Butler. Dr. Butler found a slight restriction in James' cervical flexion and extension, a palpable muscle spasm in the trapezius and sternal collateral mastoidius muscle (the shoulder area), a decreased lumbar range of motion, and a bruise on James's back. She diagnosed lumbar facet syndrome. She opined the capsule linings around some of his vertebrae were injured, causing swelling and pain and greatly limiting his ability to bend forward or back. James was also limited in his ability to run or jump. Dr. Butler further diagnosed headache syndrome and a hyperextension, hyperflexion injury of the neck (caused when James's neck went forcibly forward and back further than it would normally have done). Dr. Butler stated that James's injuries were consistent with his history of the trip and fall.
Dr. Butler began treating James on his next visit, on January 11, 1991. By January 30, James was no longer having headaches and his neck was improving. Dr. Butler released James on April 16, 1991, at which time he was asymptomatic.
Carolyn Frelow filed this suit, on behalf of James Papillion, against Western Sizzlin and its liability insurer, St. Paul, on August 14, 1991, asking for medical expenses and general damages. She alleged the liability of Western Sizzlin for the negligence of its employee, Michael Bruce. Defendants answered with a denial as to James's injuries, but admitted the circumstances of the accident and alleged the contributory negligence of James for running in the restaurant, failing to see Bruce's leg and failing to heed his mother's warning not to run. Defendants also alleged negligence on the part of Carolyn Frelow for failing to properly supervise and admonish her child.
The trial judge found James Papillion was negligent for walking too fast and Bruce was *635 negligent for obstructing James's path after he saw James approaching. The court apportioned 40% fault to James and 60% to Bruce, and awarded medical expenses of $905, $500 general damages and fixed $150 expert witness fees.
Both the plaintiff and the defendants appeal. Carolyn Frelow contends on appeal that the trial judge erred in finding James was negligent and in awarding inadequate general damages. Defendants contend the trial judge erred in finding Michael Bruce was negligent.

OPINION

Negligence of Michael Bruce
Defendants contend on appeal that the trial judge erred in finding the busboy, Michael Bruce, was negligent. It is undisputed that James did trip over Bruce's leg or foot. However, defendants contend that Bruce did nothing wrong, that he was cleaning the table as he saw James "out of the corner of his eye" coming so fast that Bruce had no opportunity to move his foot out of the aisle before James tripped. They argue that such conduct was not substandard and that James's own negligence in not seeing and avoiding Bruce's leg was the sole cause of the accident.
An owner of a business who permits the public to enter his establishment has a duty to exercise reasonable care to protect them. This duty extends to keeping the premises safe from unreasonable risks of harm or warning persons of known dangers. When the presence of small children is expected, the duty increases. Gayden v. George, 513 So.2d 515, 517 (La.App. 2d Cir. 1987), and cases cited therein. LSA-C.C. art. 2320 provides that the employer is liable for the damage caused by his employee in the exercise of the functions in which he is employed. When a trip and fall accident is allegedly the result of a specific act of an employee and not solely the result of a condition found on the premises, the principles of negligence are applicable. Crooks v. National Union Fire Ins. Co., 620 So.2d 421, 424 (La.App. 3d Cir.1993).
Under the Civil Code, every act of a person that causes damage to another obliges the one by whose fault it happened to repair it. LSA-C.C. art. 2315. Generally, negligence is defined as conduct which falls below the standard established by law for the protection of others against an unreasonable risk of harm. The test for determining whether a risk if unreasonable is supplied by the following formula. The amount of caution demanded of a person by an occasion is the result of three factors: the likelihood that his conduct will injure others, taken with the seriousness of the injury if it happens, and balanced against the cost of the precaution he must take to avoid the risk. If the product of the likelihood of the injury exceeds the burden of the precautions, the risk is unreasonable and the failure to take precautions is negligence. Dobson v. Louisiana Power & Light Co., 567 So.2d 569, 574 (La. 1990), and cases and authorities cited therein; Crooks, 620 So.2d at 425.
Under the general principles of fault arising from LSA-C.C. art. 2315, we find that Bruce did have a duty to the Western Sizzlin customers to use reasonable care not to obstruct the aisles so that the customers could travel freely between the food service stations and the tables. A reasonable man would realize that he may trip someone if he extends his leg into an aisle in a self service restaurant. Bruce saw James approaching but did not remove his leg from the aisle before James tripped. The trial judge obviously found Bruce had time to remove his foot. We conclude the trial judge did not manifestly err in finding negligence on the part of Michael Bruce and in holding defendants liable to plaintiff under LSA-C.C. art. 2320.

Negligence of James Papillion
Plaintiff contends on appeal that the trial judge erred in finding that James was negligent.
A patron is charged with using reasonable care for his own safety and must see and avoid obvious hazards. Crooks, 620 So.2d at 426; Clark v. Ark-La-Tex, 593 So.2d 870, 877 (La.App. 2d Cir.), writ denied, 596 So.2d 210 (La.1992). However, a child is not held to the same standard of care as that *636 of an adult; rather, the test is whether the child, considering his age, background and inherent intelligence, indulged in gross disregard of his own safety in the face of known, understood and perceived danger. Fields v. Senior Citizens Center, Inc., 528 So.2d 573, 581 (La.App. 2d Cir.1988), quoting Robertson v. Penn, 472 So.2d 927 (La.App. 1st Cir.), writ denied, 476 So.2d 353 (La.1985).
It is well settled that a child of nine or ten years of age may be capable of negligence. However, in determining the negligence of a child, the actions of the child must be judged by his maturity and capacity to evaluate circumstances. The degree of caution expected of a nine or ten year old boy varies with the circumstances of each case. Barbin v. State, 506 So.2d 888 (La.App. 1st Cir.1987); Gremillion v. State Farm Mut. Ins. Co., 331 So.2d 130 (La.App. 3d Cir.1976); Kontomitras v. New Orleans Public Serv., Inc., 314 So.2d 441 (La.App. 4th Cir.1975); Martinez v. Parish of East Baton Rouge, 288 So.2d 924 (La.App. 1st Cir.1973). See also, Daniels v. Dauphine, 557 So.2d 1062 (La. App. 2d Cir.), writ denied, 561 So.2d 100 (La.1990); Gladney v. Cutrer, 440 So.2d 938 (La.App. 2d Cir.), writ denied, 443 So.2d 596 (La.1983).
In the case before us, an apparently normal, average ten year old boy was carrying a plate of salad through a restaurant to the table where his family was sitting. The testimony of all eye witnesses, including Michael Bruce, the busboy, was that James was walking fast, but not running.
The defendants would have us assess 100% fault to James for walking too fast, for not watching where he was going, and for not taking a different route to his table. However, we are discussing a ten year old boy who was trying to carry a plate of salad from the salad bar to his table without spilling it. We do not believe that a ten year old child generally has sufficient experience to discern the best possible route by which to negotiate a crowded self service restaurant while carrying a plate of food; many adults find this difficult. The route he did take led directly to his family's table. The trial judge found this was a reasonable route and we agree.
However, we do not believe that the danger inherent in walking too fast in a self service restaurant while carrying a plate of food is beyond the understanding of a normal ten year old boy. Moreover, James had already been admonished by his mother not to run in the restaurant. The trial judge found that James's conduct was negligent. We cannot say the trial judge was clearly wrong.

Apportionment of Fault
All parties in this case appeal the apportionment of fault. In Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985), the supreme court set forth the relevant factors for determining the degrees of fault to be assigned:
"(1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties."
See also, Mohr v. State Farm Ins. Co., 528 So.2d 144 (La.1988).
James did not see Bruce's foot was in the aisle; the salad plate he was carrying probably obstructed his line of vision. James was a patron of a self service restaurant, and, as such, might reasonably expect unobstructed aisles down which to carry his food. James's part in the accident was inadvertent. As found by the trial judge, James was merely trying to carry his plate of food back to his table by the most direct routea reasonable choice. James's conduct in walking too fast, perhaps to beat his sister back to the table, was normal behavior for a ten year old boy, but negligent. James was capable of understanding that moving too fast in a public place can cause a trip, or slip and fall accident, and he had been told not to run.
*637 On the other hand, Michael Bruce stated that he saw James approaching, and thus was aware of the danger. Although the manner in which he was cleaning the booth was reasonable, it was unreasonable for him, as an employee of Western Sizzlin, not to move out of the path of a Western Sizzlin customer who was carrying a plate of food down the aisle.
The trial judge could have reasonably found that either Bruce or James could have avoided the accident by using reasonable care, but that Bruce had a slightly greater capacity to do so.
Therefore, we conclude the trial judge was not clearly wrong in assessing 60% fault to Bruce and 40% to James.

General Damages
Finally, Carolyn Frelow appeals the award of $500 damages for James's pain and suffering, contending it is inadequate.
James testified that he missed one day of school due to the accident, suffered from headaches for a month, and had a painful injury to his back which prevented him from participating fully in his normal physical activities (running, jumping, basketball) for about four months. He underwent four months of physical therapy, after which he was released as completely asymptomatic. His medical bills totaled $905. We find the trial judge abused his great discretion in awarding only $500 general damages and raise that award to $2000. Compare, Trusclair v. Brown Eagle Ice Co., 594 So.2d 464 (La.App. 1st Cir.1991); Bonnette v. Wal-Mart Stores, Inc., 542 So.2d 827 (La.App. 3d Cir.), writ denied, 548 So.2d 310 (La.1989).

CONCLUSION
Accordingly, we modify the judgment of the trial court to increase the award for general damages from $500 to $2000. Therefore, Western Sizzlin and St. Paul are liable to Carolyn Frelow, on behalf of James Papillion, for $2000 general damages plus $950 medical expenses, a total of $2950, less 40% for James's comparative fault, the net award being $1770.

DISPOSITION
For the reasons given, the judgment of the trial court is modified. Defendants, Western Sizzlin Steakhouse and St. Paul Fire & Marine Insurance Co., are cast in judgment to plaintiff, Carolyn Frelow on behalf of her minor son James Papillion, for $1770, plus legal interest from date of judicial demand until paid. Costs of trial and this appeal are assessed to defendants-appellants.
AMENDED and AFFIRMED.
NOTES
[*] Honorable William A. Culpepper participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.