696 So.2d 128 (1997)
Sharon A. SOUTHERN, et al., Plaintiffs-Appellants,
v.
John M. LYONS, et al., Defendants-Appellees.
No. 97-19.
Court of Appeal of Louisiana, Third Circuit.
May 28, 1997.
*130 Steven Wyckoff Harris, Alexandria, Barry Marcus Barnett, New Orleans, for Sharon A. Southern et al.
Joseph Texada Dalrymple, Ellis George Saybe, Scott Miller Brame, Alexandria, for John M. Lyons et al.
John Gutierrez McLure, Charles K. Charrier, Alexandria, Bonita K. Preuette, for State Farm Fire & Casualty Co., et al.
Before YELVERTON, COOKS and GREMILLION, JJ.
GREMILLION, Judge.
The plaintiff, Donnie Free, was injured when a boat ran over him while he was under the supervision of Jerry Clark. Following a trial by jury, Donnie, and his mother, Sharon Southern, appeal the jury's finding that he was fifty percent at fault in causing the accident and its award of damages as inadequate. For the reasons that follow, we increase the total amount of damages awarded to Donnie from $14,000.00 to $85,000.00 and decrease his percentage of comparative fault from fifty percent to twenty percent. Therefore, the judgment in favor of Donnie is amended to $68,000.00.

FACTS
On June 8, 1991, Clark was given permission to take Southern's three younger sons boating on Buhlow Lake, in Pineville, Louisiana. Clark ran a Sunday school bus route for The Pentecostals of Alexandria Church, and he invited several boys from that route for an outing on Buhlow Lake. Clark arrived at Southern's home in Tioga at 3:00 p.m. and picked up Donnie, his twin brother, Lonnie, their younger brother, Thomas, and John and Kenneth Bookout. The three older boys, Donnie, Lonnie, and John, all thirteen years old, rode in the back of Clark's pickup truck, while the two younger boys rode in the cab with Clark. While on the way to pick up his boat at his home in Alexandria, Clark dropped the three older boys off at Buhlow Lake to await his return. Within five to ten minutes of his departure, the boys were playing in the water when Donnie, who was holding his breath underwater, was hit by a boat piloted by John M. Lyons.
Following the accident, Donnie was transported to the Rapides General Hospital, where he was treated by Dr. Louis Perdue for extensive lacerations over the back of his left hip, shallower lacerations up his back and under his left arm pit, and lacerations and abrasions on his left thigh. Dr. Perdue described Donnie's main wound as severe and stated that it was a large gaping wound from which there had been skin and soft tissue loss. He estimated that it was four to six inches wide from top to bottom, and about eight to ten inches across from side to side. After x-rays were taken of his pelvis and chest, Donnie was taken into surgery and placed under a general anesthesia for cleansing and debridement of his wounds. Following *131 this procedure, he was admitted into the hospital.
On June 11, 1991, Dr. John McCabe, a plastic surgeon, examined Donnie and determined that there had been a large skin avulsion on the left flank, with a five by three and one-half to four inch full thickness skin loss. Dr. McCabe determined that a skin graft was necessary, so Donnie was again taken into surgery and placed under a general anesthesia. Further debridement of the wound was performed, and then a split thickness skin graft was taken from his left lateral thigh, placed over the wound, and then sutured into place. Dr. McCabe described the wound as having been caused by a traumatic incident, and stated that it represented a depression from the normal contour of the skin or body.
Following his release from the hospital on June 12, 1991, Donnie was cared for by Southern at home. This involved changing his bandages, sterile soaks for twenty minutes twice a day, and placing salves on his side. Although he was given crutches by Dr. McCabe, Donnie was unable to use them for approximately three weeks until the laceration under his arm healed. By the time Southern returned to work a month later, Donnie was able to move around on his crutches, however, she stated that he was unable to do anything for the remainder of the summer. Donnie returned to Dr. McCabe three times to have his wound drained, and was finally released by him on August 11, 1991. Donnie was able to attend school in August and, although he was able to walk without the crutches, he still limped on his left leg. He did not participate in physical education for a year after the accident.
After his family moved to Texas, Donnie saw Dr. Bruce Bollinger on April 22, 1994, because the muscles in his left leg were cramping. Dr. Bollinger prescribed physical therapy, and Donnie attended it approximately five times. He was given exercises by the physical therapist, which he did twice a day for one month. These exercises strengthened his leg and enabled him to walk and stand on it longer, and to stop limping.
As a result of this accident, Southern filed suit, individually and as the administratrix of Donnie's estate, against Lyons, Clark and his insurer, State Farm Fire and Casualty Company, the City of Pineville, and the First Pentecostal Church. In her petition, she alleged that the First Pentecostal Church was liable because Donnie was under the care and supervision of Clark, who was acting as the church's agent. She further alleged that Pineville was liable as the owner of the lake. After various answers and cross-claims were filed by the defendants, two partial judgments of dismissal were rendered releasing The Pentecostals of Alexandria (First Pentecostal Church) and Pineville. On June 10, 1996, Donnie was substituted as a party plaintiff after attaining his majority.
A jury trial was held in this matter on June 25-27, 1996, after which the jury rendered a verdict finding both Donnie and Clark at fault in causing the accident. The jury apportioned their fault at fifty percent each. The jury found no fault on the part of either Lyons or Pineville. Damages were awarded to Donnie in the amount of $10,000.00 for physical pain and suffering (past and future), $2,500.00 for mental pain and suffering (past and future), and $1,500.00 for disfigurement and scarring. No award was made for future medical expenses, physical disability, or loss of enjoyment of life. The jury awarded Southern $13,434.92 for Donnie's past medical expenses and $680.00 for loss of earnings. A judgment was signed by the trial court on August 5, 1996, awarding Donnie $7,000.00, and Southern $7,057.46, in accordance with the jury's verdict. Donnie and Southern appeal this judgment.

ISSUES
On appeal, Donnie and Southern raise four assignments of error. They allege that the jury erred by awarding Donnie inadequate damages for his injuries; that it erred in finding him at fault or equally at fault with Clark in causing the accident; that the trial court erred in allowing a statement summary by Lieutenant Wiley into evidence; and that the trial court erred in failing to grant their motion to strike the jury.

ASSIGNMENT OF ERROR NUMBER ONE
In their first assignment of error, Donnie and Southern argue that the jury *132 erred in making an unconscionably low award for damages. Before an appellate court will disturb an award of damages on appeal, the record must clearly reveal that the trier of fact abused its discretion in making the award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). In order to determine whether an abuse of discretion has occurred, we must first look to the individual circumstances of the injured plaintiff. Reck v. Stevens, 373 So.2d 498 (La.1979). "It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award." Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
Donnie was underwater when he heard a thumping sound. Coming up to investigate, he had just reached the surface, when Lyons' boat hit him in the head and pushed him back underwater where he was hit by the boat's propeller. Donnie recalled the entire incident, including the ride to the hospital in the ambulance and bits and pieces of the emergency room. He stated that he remembered the second surgery and testified that the skin graft was quite painful, that it hurt almost more than his injury. Southern testified that Donnie refused to look at his side for three weeks after the accident. She described him as being very depressed, upset, and angry, and said that he was very protective of his side.
As a result of his injury, Donnie testified that he is afraid to do anything where he could fall and hurt himself. He quit playing sports and performing martial arts. He worries about falling or sticking something in his side. It was approximately a year and a half after the accident before he felt really good, although he still has back pain every now and then. He is sensitive about his scar and does not like people asking him about it. He testified that he does not wear shorts or go without a shirt, although he admitted that his girlfriend has talked him into taking off his shirt whenever he washes her car.
Donnie testified that he joined the National Guard, on June 9, 1995, after finishing high school through the Camp Beauregard Youth Challenge Program. After one month of boot camp at Fort Sill in Oklahoma, he was medically discharged from the Army because of his inability to wear a rut sack. Since he has only a thin layer of skin over his left hip, the rut sack digs into his side, causing it to bleed. Sergeant Francis J. Toomey, II, the full time readiness NCO for his National Guard battalion, stationed in Alexandria, testified that the medical board recommended that Donnie be discharged because of a severe soft tissue defect of his left hip which precluded him from wearing military equipment.
Dr. McCabe testified that surgery could be performed on Donnie to provide him with more padding over his left hip. The surgery would involve removing the skin graft and rotating a flap of skin containing fat from nearby into the depressed area. He stated that the procedure would provide more padding and would result in less pain if Donnie were wearing a belt or something heavy which rubbed against his hip. Dr. McCabe did not recommend the procedure but testified that he would perform it if Donnie asked him to for the functional reasons given. The surgery would cost $4,000.00, and the recovery time would be six weeks. Donnie would still have a significant scar and a new scar where the donor skin was taken from. Donnie testified that he did not intend to have the surgery and that he would only have it if it were really needed.
As we stated, the jury awarded Donnie $10,000.00 for pain and suffering (past and future), $2,500.00 for mental pain and suffering (past and future), and $1,500.00 for disfigurement and scarring. No damages were awarded for future medical expenses, physical disability, or loss of enjoyment of life. After reviewing the evidence, we find that this award is an abuse of discretion and should be increased.
If on review, an appellate court has determined that a jury has committed an abuse of discretion by awarding inadequate damages, then it should review prior awards to determine the appropriate modification of *133 that award. Theriot v. Allstate Ins. Co., 625 So.2d 1337 (La.1993). The test in that instance, is whether the award is greatly disproportionate to the mass of past awards for truly similar injuries. Id. The award will only be disturbed to the extent of lowering or raising it to the highest or lowest point which is reasonably within the discretion afforded the trial court. Id.
After reviewing other cases, we were unable to find any dealing with truly similar injuries. Taking into account the following factors: Donnie's age when the accident occurred; his length of time hospitalized; the two surgical procedures, including a skin graft; the length of time he was bedridden; his total recovery time; his permanent disfiguring scar; and the effect on his life, we find that the lowest reasonable amount of damages that could have been awarded was a total of $85,000.00. We decline to make future medical expenses part of this award, because Donnie testified that he did not intend to have the surgery described by Dr. McCabe. The jury's verdict is amended accordingly.

ASSIGNMENT OF ERROR NUMBER TWO
In their second assignment of error, Donnie and Southern argue that the jury erred by finding him at fault or equally at fault with Clark in causing this accident. The jury found Donnie and Clark both fifty percent at fault.
The testimony elicited at trial was contradictory as to the reason Clark dropped the boys off and whether he gave them permission to swim. The three boys stated that they did not know they were going to stop at the lake until Clark pulled in and told them to wait for him there. Clark testified that the boys beat on the rear window of his truck and told him that they wanted to wait for him at the lake. Whatever the reason, Clark dropped the boys off at the lake and then proceeded to Alexandria to pick up his boat.
Donnie, Lonnie, and John each testified that Clark gave them permission to play in the water while they awaited his return with the boat. Clark stated that he told them to wait by the water, to be careful, and to stay there until he returned. However, in his deposition, Clark admitted that he could not recall exactly what he told the boys before he left them. He was not there when the accident occurred.
There were three signs located at Buhlow Lake restricting swimming. One sign was located at the entrance to the lake while another two were located at the boat ramp. Clark passed both of these signs before dropping the boys off. Donnie, Lonnie, and John testified that they never saw the signs because they were sitting in the bed of Clark's pickup with their backs against the cab, facing towards the tailgate. Clark stated that he did not observe any "no swimming" signs.
Donnie, Lonnie, and John each stated that there were people in the water when they arrived at the lake. Donnie testified that people were unloading their boats at the boat ramp and that both adults and children were in the water. The children to his right had on either ski vests or life jackets, however, he did not recall seeing any skis. Donnie testified that he never saw Lyons' boat come around the corner or head towards them. He was underwater when he heard the boat's propeller and then was hit. He did not recall telling anyone that he saw the boat before going underwater. He also did not remember talking to a Wildlife and Fisheries Agent while he was in the hospital.
Lonnie saw Lyons' boat approach them from a curve in the lake, after Donnie had been underwater for about twenty seconds. The boat came between John and him and some other people, and then turned towards the shore, as though idling to a stop. He testified he did not try to warn Donnie because he was underwater. John heard the boat approaching, but was unsure of its location. He testified that he did not really see it before it hit Donnie, that he glanced around and saw it come between them. He realized the boat had hit Donnie when it spun around.
Burton Wiley, a retired lieutenant with the Department of Wildlife and Fisheries, investigated the accident and interviewed Donnie on June 10, 1991, while he was in the hospital. At the trial, he testified that he did *134 not have a direct recollection as to whether Donnie admitted seeing Lyons' boat before diving underwater. However, his report, which summarized his conversation with Donnie, reflected that Donnie told him he saw a boat approaching at medium speed and he continued to swim and dive underwater. In his deposition, Lieutenant Wiley stated that he specifically asked Donnie whether he had seen the boat prior to being hit and that Donnie answered that he had not.
Lyons testified that after hitting Donnie, he approached him to ascertain his condition. He asked Donnie where his parents were, and Donnie replied that his parents were not there. He then told Lyons that the bus driver had dropped them off and had gone to get his boat. Donnie told Lyons that Clark had given them permission to swim while they waited on him.
The jury found Donnie negligent, along with Clark, in causing this accident. Donnie and Southern allege that the jury erred in doing so, because he was under Clark's supervision doing what Clark had told him to do. Thus, Donnie and Southern argue that Donnie's fault should be attributed to Clark.
Although a child may be capable of negligence, he is not held to the same standard of care as that of an adult. The test is whether the child, considering his age, background, and inherent intelligence, indulged in gross disregard of his own safety in the face of known, understood, and perceived danger. Frelow v. St. Paul Fire & Marine Ins. Co., 93-759 (La.App. 3 Cir. 2/2/94); 631 So.2d 632. In determining the negligence of a child, the actions of the child must be judged by his maturity and capacity to evaluate circumstances. Id. The degree of caution expected of a thirteen-year-old boy varies according to the circumstances of each case. Id.
In this instance, Donnie, along with Lonnie and John, entered the water within five minutes of Clark's departure. They were five to ten yards out from the bank, in approximately three-feet deep water, holding a contest to see who could hold their breath the longest underwater. Donnie testified that he saw people unloading their boats at the boat ramp, which was located to their right. Thus, he knew there were boats nearby, whether or not he saw a boat approaching their location. Further, Donnie testified that he was unfamiliar with this part of Buhlow Lake, since he had only been to the rear of the lake a couple of times fishing with his father. Finally, Donnie and Lonnie both testified that they were never allowed to swim unless they were supervised by an adult. The jury found negligence on the part of Donnie in causing the accident. We cannot say that the jury was clearly wrong.
Next, Donnie and Sharon argue that if he was at fault, the jury erred in ascribing to him the same percentage of fault as Clark. When apportioning fault in a comparative fault situation, five factors are to be considered:
1) Whether the conduct resulted from an inadvertence or involved an awareness of the danger;
2) How great a risk was created by the conduct;
3) The significance of what was sought by the conduct;
4) The capacities of the actor, whether superior or inferior; and
5) Any extenuating circumstances which might require the actor to proceed in haste without proper thought.
Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985).
Under the facts of this case, three thirteen year old boys were dropped off and left at the lake unsupervised. Although there is dispute as to the reason Clark dropped the boys off, he was the adult in charge of supervising them. He failed in this duty when he left the boys alone. There is also dispute over whether Clark gave the boys permission to swim. However, even Clark testified that the boys were responsible, well-disciplined, and that he had no concern over their ability to follow directions. Clark further admitted that he had never seen the boys swim, nor did he know how well they could swim. We find that Clark was the superior actor in creating the hazardous situation which arose and in failing to adequately supervise the boys. We further find that Donnie was only guilty of inadvertence in causing the accident. Thus, we find that the majority of the *135 fault should rest with Clark. Once an appellate court finds a "clearly wrong" apportionment of fault, it should adjust the award, but only to the extent of lowering or raising it to the highest or lowest point respectively which is reasonably within the trial court or jury's discretion. Clement v. Frey, 95-1119, 95-1163 (La.1/16/96); 666 So.2d 607. After taking under consideration the facts of this case, we find that the highest percentage of fault that the jury could reasonably have apportioned to Donnie is twenty percent, while the lowest percentage of fault that it could have apportioned to Clark is eighty percent. The judgment of the trial court is amended accordingly.

ASSIGNMENT OF ERROR NUMBER THREE
In their third assignment of error, Donnie and Southern argue that the trial court erred by allowing into evidence the statement summary prepared by Lieutenant Wiley as part of his investigation. They argue that the statement was hearsay and, as such, should have been inadmissable.
Lieutenant Wiley, when asked if Donnie reported seeing Lyons' boat in the area prior to the accident, did not have a direct recollection but stated that his report reflected that Donnie admitted seeing the boat prior to the accident. When counsel for the plaintiffs objected to the introduction of Lieutenant Wiley's statement as hearsay, the trial court overruled the objection and admitted the report into evidence.
Donnie and Southern argue that because Wiley testified in a deposition, taken on March 21, 1996, that he had clear and independent recollection that Donnie said he did not see a boat prior to being hit, his statement should not have been admitted into evidence. We disagree. Article 803(5) of the Louisiana Code of Evidence, provides an exception to the general hearsay rule of "recorded recollection" as follows:
A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence and received as an exhibit but may not itself be taken into the jury room. This exception is subject to the provisions of Article 612.
Lieutenant Wiley testified at the hearing that he did not have direct recollection on that issue, so he referred to his statement. The statement was taken on June 10, 1991, two days after the incident while Donnie was still in the hospital, from notes taken by Wiley and transcribed that same day. Thus, the matter was fresh in his mind when the statement was taken and it was admissible. "Absent abuse of discretion, an appellate court will not overrule a trial court's evidentiary determinations." Lee v. Automotive Cas. Ins. Co., 96-517, p. 4 (La.App. 3 Cir. 11/6/96); 682 So.2d 995, 998, writ denied, 96-2949 (La.1/31/97); 687 So.2d 409. We find no abuse of discretion, thus, this assignment of error is dismissed for lack of merit.

ASSIGNMENT OF ERROR NUMBER FOUR
In their final assignment of error, Donnie and Southern argue that the trial court erred by denying their motion to strike the jury. The request for trial by jury was made by The Pentecostals of Alexandria in its answer. The Pentecostals of Alexandria was later dismissed from the action under a partial judgment of dismissal. No other party requested trial by jury. Prior to trial, Donnie and Southern filed a motion to set aside the jury order. Their motion was denied by the trial court, so they sought supervisory writs from this court. The writ was denied by this court on June 24, 1996. Donnie and Southern now appeal the trial court's refusal to strike the jury.
Under the law of the case doctrine, we find that this assignment of error lacks merit. This issue was already decided by this court upon a previous application for supervisory writs. Since this court has already decided that the trial court's ruling was correct, we decline to take up the issue again on appeal. Guilbeaux v. The Times of *136 Acadiana, Inc., 94-1270 (La.App. 3 Cir. 8/9/95); 661 So.2d 1027, writ denied, 95-2942 (La.3/29/96); 670 So.2d 1238.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is amended to increase the total amount of damages awarded to the plaintiff-appellant, Donnie Free, from $14,000.00 to $85,000.00. The judgment is also amended to reduce Donnie's fault from fifty percent to twenty percent and to increase the fault of the defendant-appellee, Jerry Clark, from fifty percent to eighty percent. Therefore, the award to Donnie Free is increased from $7,000.00 to $68,000.00. The judgment is also amended to increase the amount of damages awarded to the plaintiff-appellant, Sharon Southern, from $7,057.46 to $11,291.94 in accordance with Donnie's decrease in fault. The costs of this matter are assessed to the defendant-appellee, Jerry Clark.
AFFIRMED AS AMENDED.