11 YELVERTON, Judge.
Helen Bond slipped and nearly fell in a check-out lane at a Super 1 grocery in Pineville. The trial and the closing arguments of counsel focused on the evidence that a five-pound bag of flour fell off a conveyor belt and spilled in a check-out lane at the grocery, and that Ms. Bond slipped on the flour at a location some eight feet away from the spill while she was walking through another check-out lane. Ms. Bond and her husband sued for damages. A jury returned a verdict in favor of the grocery store and Victor Car-lock, its assistant manager on duty at the time of the incident, rejecting all of the plaintiffs’ demands.
The Bonds appeal, assigning five errors. Three assignments relate to evidence admitted or rejected. The other two assignments relate to the jury charges. The Bonds ask us to find that these errors, either individually or collectively, interdicted the jury’s verdict; and they ask us to give the record a de novo review, find the Defendants at fault, and award them damages.
THE CONTEXT FACTS AND ELEMENTS OF PROOF
Ms. Bond’s injury occurred on May 4, 1995, as she and her husband were checking out at Brookshire Grocery Company’s store, Super 1. The Bonds had gone shopping with their daughter-in-law Judy and granddaughter Debbie. Judy and Debbie checked out first, followed by Mr. and Ms. Bond in the same aisle, or lane. Mr. Bond unloaded his groceries onto the conveyor belt that transported the goods to the cashier to be scanned. As Mr. Bond was unloading the groceries, he told Ms. Bond to go around in front of their cart and watch the register. Because their lane was blocked by the grocery cart, Ms. Bond had to walk around through a closed check-out lane next to hers. As she walked in the closed lane she slipped, but she was | ¡¡able to keep from falling by catching and pulling herself up with the counter. Ms. Bond then asked the cashier to call a manager to fill out an accident report because she believed that she hurt herself when she slipped. She also told the cashier that there was something on the floor in the closed lane and suggested that the cashier get someone to clean it up. The cashier, Christy Rainwater, called for service with a mop. Jamie Knight, the utility clerk, responded to the call for service and inspected the floor. The manager on duty, *710 Victor Carlock (a Defendant), then arrived at the front, and Ms. Bond informed him about her accident. In the meantime, Tracy Foster, the front-end manager, came to the register and offered her assistance and went and checked the floor area where Ms. Bond had slipped. Mr. Carlock called Jamie back to the front, and Jamie again inspected the floor. All of these store personnel testified that when they inspected the floor they did not find anything on it. Mr. Carlock told Ms. Bond to come back the following day to complete an accident report if she believed she was hurt.
A merchant’s liability to a customer in a slip and fall case is governed by Louisiana Revised Statute 9:2800.6. The version of this statute in effect at the time of this accident read in pertinent part as follows:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
|3(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
Under this statute the first two essential elements which the claimants had to prove were that there was a hazardous condition on the floor and that it presented an unreasonable risk of harm.
In the present case, the Bonds theorize that the condition on the floor of the closed check-out lane which caused Helen to slip, was a flour spill. This theory, as explained by counsel for Plaintiff in oral argument, is based on circumstantial evidence. The circumstances begin with the testimony of Mr. Bond that a five-pound bag of flour, which they were purchasing, fell off the conveyor belt onto the floor. Mr. Bond testified he saw it fall, and Ms. Bond testified she later saw it on the floor. None of the four Bonds saw flour on the floor where Ms. Bond slipped. Where she slipped was eight-feet away from where the flour fell. Ms. Bond did not know if flour was on the floor where she slipped. Her husband never went to the lane where his wife slipped to see what might have caused it. Debbie went to help her grandmother, but never looked at the floor. Debbie testified that she herself had no trouble traversing the lane. Judy also testified she did not inspect the area where her mother-in-law slipped.
Several weeks later, after reflecting on events, the Bonds attributed the slip to spilled flour. On the night of the accident, they did not connect the flour to the slip. When she returned the next day and met with Rodney King (an assistant manager) to prepare the accident report, Ms. Bond did not tell him about the flour. The Super 1 employees testified that they were not made aware that a bag of flour had fallen off the conveyor belt onto the floor. There was no mention of flour on the floor when the Raccident happened, and they found no substance on the floor when they *711 particularly checked it following Ms. Bond’s announcement that she had slipped. A month after the accident, Ms. Bond remembered and related in a telephone statement that, right after she slipped, she looked on the bottom of her shoe and saw flour there. She also testified that after she slipped, but before she went on to the check-out stand to monitor their purchases, and before she told anyone at the store about her near-fall, she and her daughter-in-law Judy had a conversation. At the trial, Ms. Bond related that conversation. Her testimony related that her daughter-in-law asked, “What did you slip in?” Ms. Bond replied, “I don’t know. I didn’t look.” “Well,” asked Judy, “is it anything on your shoes?” Ms. Bond answered, “I don’t know.” Judy said, ‘Well, let me see.” After looking, Judy said, “It’s something white on them. Looks like flour.” It was after this conversation that Ms. Bond went around to the check-out stand in their lane to pay for her groceries. Standing there, she looked and saw a bag of flour on the floor of the lane. Some had spilled, about a cup. She picked the bag up and ordered a new bag. The manager and the cleanup boy came over after she had picked up the bag of flour. When she picked up the flour bag, she did not connect it to her accident. This was Ms. Bond’s testimony at the trial.
The trial took four days. After deliberating less than 23 minutes, the jury unanimously ruled in favor of the Defendants.
OPINION
Plaintiffs specify the following errors:
(1) The trial court committed manifest error and error of law and abuse of discretion when it allowed into evidence over plaintiffs hearsay objections the contents of out of court, unsworn written statements prepared by Brookshire employees the day after Plaintiffs injury.
|k(2) The trial court committed an error of law, manifest error and abuse of discretion when it allowed defense counsel to question Plaintiff, Helen Bond, about having filed an earlier workers’ compensation claim for an unrelated, 1989, on the job injury.
(3) The trial court abused its discretion when it refused to qualify and allow Plaintiffs retail grocery expert, John McKinney to testify as an expert based on his having over 27 years experience with various retailers in the management of retail groceries.
(4) The trial court committed an error of law, manifest error and abuse of discretion when it gave the jury charge based on an earlier version of Louisiana Revised Statute 9:2800.6 and refused to give Plaintiffs Jury Charge No. 19 which accurately incorporated the present law applicable under that statute.
(5) The trial court committed an error of law and manifest error and abuse of discretion when it over objection, refused to give Plaintiffs Jury Charge No. 21 providing the test for determining if a particular risk was an unreasonable risk of harm.
We will now discuss each assignment.

(1) Objection to hearsay

Christy, the cashier, and Tracy, the front-end manager, both made statements the day after the accident. They were allowed to read those statements to the jury. Plaintiffs objected, and the trial court overruled the objection.
Louisiana .Code of Evidence Article 803(5) provides:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
*712 (5) Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence and received as an exhibit but may not itself be taken into the jury room. This exception is subject to the provisions of Article 612.
| fiBoth Christy and Tracy had quit working for Super 1 long before the trial, which took place five years after the accident. Both of these witnesses had trouble remembering the details. Both identified their signatures and dates on the statements. Absent abuse of discretion, an appellate court will not overrule a trial court’s evidentiary determinations. Southern v. Lyons, 97-19 (La.App. 3 Cir. 5/28/97); 696 So.2d 128, writ denied, 97-1729 (La. 10/13/97); 703 So.2d 617. We find no error in this ruling.

(2) Questioning about prior injury

Plaintiffs assert that it was error to allow Defendants to question Ms. Bond about a workers’ compensation claim she asserted in 1990 for a 1989 work injury. The argument is based upon Louisiana Code of Evidence Articles 402 and 403, dealing with the general admissibility of relevant evidence and providing for its exclusion if (as here argued) its probative value is substantially outweighed by the danger of unfair prejudice.
Ms. Bond claimed that her condition was aggravated by the incident at Super 1. Her husband made a claim for loss of consortium and that this incident alone caused his loss. Ms. Bond testified that her back injury from 1989 had completely resolved before the present accident of May 4,1995, and that she was having no problems. There were inconsistencies between Ms. Bond’s explanation of the duration of her work-related disability and the medical records of Dr. Drerup, her 1989 surgeon. Because of these inconsistencies in the record, there were issues of both credibility and damages. The questions asked about this prior injury were allowed. The trial judge, in deciding that the probative value of this cross-examination was not outweighed by prejudice, did not abuse his discretion.

\7(S) Disqualification of expert

Plaintiffs contend that the trial court abused its discretion by refusing to qualify John McKinney as an expert. Until retirement, Mr. McKinney had been in the grocery business for 27 years. The last seventeen years of that time he was owner of a store in Colfax, Louisiana. “A trial judge has wide discretion in determining whether to allow a witness to testify as an expert, and his judgment will not be disturbed by an appellate court unless it is clearly erroneous.” Mistich v. Volkswagen of Germany Inc., 95-0939, p. 8 (La.1/29/96); 666 So.2d 1073, 1079, on rehearing on other grounds, 95-0939 (La.11/25/96); 682 So.2d 239.
The reception of expert testimony depends on whether his knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. La.Code Evid. art. 702. Mr. McKinney was offered as an expert to testify about the responsibilities of checkers in grocery stores; the appropriate training of employees who were cashiers and checkers, with particular emphasis on hazards such as flour that should be recognized by these employees; and spills and responses of employees to those spills. More concisely, he was tendered as an expert in the operation of *713 retail groceries, including the supervision and the training of employees in safe operating procedures. The trial judge refused to allow him to testify as an expert because he lacked the expertise to explain how the flour got the considerable distance from where it spilled to where Ms. Bond slipped.
After the trial judge rejected the tender as an expert, the Bonds were permitted to make a proffer of Mr. McKinney’s testimony. The proffer is in the record, and we have examined it carefully. His testimony convinces us that it is not necessary to rule on the correctness of the court’s rejection of his qualifications as an expert; rather, we find that his testimony could not have assisted the trier of fact. He testified that if a |sbag of flour was pushed off the conveyor belt, for any reason, it would have been the fault of the store, because it was the cashier’s job to prevent that from happening. He also testified that once that happened, especially with flour, it would have been the cashier’s job to stop the traffic or the customer flow “from around the area.” If it fell through the hole under the counter top, the cashier should have stopped the flow in the adjacent register, too, until she ascertained that none of the flour had gotten over there. He did not explain how a one-cup spill from a fallen flour bag could create a simultaneous threat to pedestrians eight feet away. He said merely that Ms. Bond was close enough to the spill so that flour would have been on her shoes and feet. On cross-examination, Mr. McKinney testified that he had never had a slip and fall in his store in the seventeen years he owned it. He had never been to the Super 1 store to inspect it.
Mr. McKinney’s testimony could not have helped the jury understand whether the Plaintiffs had proved the first element of fact essential to their case: whether there was flour on the floor where she slipped.

(k) Plaintiff’s Jury Charge No. 19

Plaintiffs complain that a jury charge contrary to Louisiana Revised Statute Article 9:2800.6 was given and that the trial court refused to give their Jury Charge No. 19. The statute was revised in 1990 and in 1996. Because this accident took place on May 4, 1995, the statute as revised in 1990 was applicable. We have quoted that version earlier in this opinion.
The jury charge that Plaintiff assigns as error was:
The law of premises liability creates what it calls shifting burdens of proof. That means that Mr. and Ms. Bond have the initial burden of proving that a premises hazard existed, and may do so by circumstantial evidence. They also must prove that Super 1 failed to exercise treasonable care to keep its aisles, passageways, floors, shelves and displays in a reasonably safe condition.
If Mr. and Ms. Bond successfully prove there was a pre-existing hazard or a dangerous condition, the burden of proof then shifts to Super 1. Super 1 must then produce evidence of a reasonable effort to keep the floor free of any hazardous conditions that might give rise to damages.
They may exculpate themselves from fault by showing that they use reasonable care to avoid such hazards by means such as periodic cleanup and inspection procedures.
Obviously, the trial court committed error by giving the jury the wrong law regarding shifting of the burden of proof. The instruction used the law prior to 1990. The Plaintiffs’ Requested Charge 19 tracked the proper statute, which was the 1990 revision.
*714 Under the law prior to 1990, a plaintiff enjoyed a presumption of negligence once he established that his injury resulted from a dangerous condition on the floor. The law required that at this point the burden of proof shifted to defendants to exculpate themselves. The 1990 amendment eliminated any language that shifted the burden of proof to the defendant to exculpate itself from liability. So, the error in the present case was in the Plaintiffs’ favor; it lessened their burden of proof. It was not prejudicial, and therefore it was harmless.
By this assignment, the Plaintiffs also allege error with the failure of the charge to contain any instruction concerning constructive notice or its definition. We agree that this, too, was error. The jury should have been instructed that the Plaintiffs had to prove that the merchant either created or had actual or constructive notice of the condition. The absence of that instruction, however, did not prejudice Plaintiffs. It favored them because it meant one less element they had to prove.

|in(5) Plaintiffs’ Jury Charge No. 21

The last assignment is the court’s failure to give the Plaintiffs’ requested jury charge defining an unreasonable risk of harm. The argument is that the Plaintiffs’ burden required proof that the condition presented an unreasonable risk of harm, and that the jury was not instructed how to make the determination of whether a risk of harm was an unreasonable one.
A merchant’s duty under the effective statute was to keep the premises free of any hazardous condition. The charge given by the judge was that the Plaintiffs had the burden of proving “that a premises hazard existed” and that “there was a preexisting hazard or a dangerous condition.” The Plaintiffs’ charge that was requested and rejected contained the following explanation:
In determining whether a defect presents an unreasonable risk of harm, you must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the costs and feasibility of repair. Simply put, you must decide whether the social value and utility of the hazard outweigh, and thus justify its potential harm to others?
The requested instruction was taken from Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98); 708 So.2d 362.
The instruction, had it been given, would have been correct. However, its absence did not prejudice Plaintiffs’ case; if anything, it made their burden of proof easier. According to the instructions, all they had to prove was a dangerous or hazardous condition on the floor.
An appellate court must exercise great restraint before overturning a jury verdict because the instructions were so erroneous as to be prejudicial. Evans v. Tudor Const., 95-1029 (La.App. 3 Cir. 1/31/96); 670 So.2d 447. The jury’s responses to the initial interrogatories were that the Defendants were not negligent _Jjjand that their negligence was not a cause-in-fact of the accident. The emphasis in the presentation of the case throughout the trial and in the closing arguments leave no doubt that these jury responses equated to a finding that there was no flour on the floor where Ms. Bond slipped. Whether the condition would have been unreasonably dangerous, had it existed, was academic. We find no merit to this argument.
CONCLUSION
Based on the foregoing, we affirm the trial court’s judgment in favor of Defendants, Brookshire Grocery Company and *715 Victor Oarlock. Costs of this appeal are assessed to the Bonds.
AFFIRMED.